[Sac. No. 5218.   In Bank.—January 25, 1939.]

THEODORE VIERRA et al., Respondents, v. A. T. PE-
REIRA et al., Appellants.

Wilcox & Rodin and E. H. Zion for Appellants.

Harold L. Hjelm and Hjelm & Hjelm for Respondents.

EDMONDS, J.—During the cropping season of 1937 a controversy arose over the plaintiffs' interest in thirteen acres of alfalfa land owned by the defendants husband and wife as community property. The plaintiffs claimed that they were entitled to possession of the property pursuant to the terms of an oral lease thereof made to them by the defendants for the period of three years from December 1, 1935. In April, 1937, they commenced this action to quiet title to their leasehold interest and to restrain any interference by defendants with it. The trial court upheld their contentions and the defendants appealed from the judgment.

The complaint alleged the making of the oral agreement of lease, a promise to reduce it to writing, and failure on the part of the defendants to keep the promise. The defendants, by way of answer, denied the existence of the lease for the term stated and pleaded the statute of frauds. They also cross-complained for restitution of the premises, damages, and other equitable relief. The problem on appeal is to determine whether the trial court correctly concluded that the case is a proper one in which to apply the doctrine of equitable estoppel. Were the defendants estopped to rely upon the statute of frauds (sec. 1624, Civ. Code; sec. 1973, Code Civ. Proc.) as a bar to any recovery by the plaintiffs? And was the defendant wife further estopped to avoid the oral agreement upon the ground that it was made without her written consent or authorization (sec. 172a, Civ. Code)?

The trial court found that on December 1, 1935, the defendants orally agreed to lease the thirteen acres to plaintiffs for a period of three years. The transaction, so the findings recite, was handled entirely by defendant husband, who acted with the authority, knowledge and consent of his wife, and as her agent. Although the wife denied that she authorized or agreed to a lease to plaintiffs for more than one year, she admitted having seen plaintiffs at work on the land, and she also testified that her husband was renting, managing and caring for the property with her consent. At no time did she repudiate any of his acts or take any steps to disaffirm his agreement with plaintiffs. According to the testimony, a request was made by plaintiffs that the lease be put in writing, but the defendant husband stated that it was not necessary; his word was good. It appears that

he had known plaintiffs since their childhood, for the families were neighbors; the plaintiffs relied upon his assurance, and were led to believe that a written lease was not necessary.

Under the terms of the oral agreement plaintiffs, at their own expense, were required to level, prepare for irrigation, and plant the entire thirteen acres. In return for this work they were to have the use and occupation of the premises as tenants for the years 1936, 1937, and 1938, together with the exclusive ownership of all crops produced thereon during 1936, and an equal share, with defendants, of all crops produced during 1937 and 1938. They agreed to plant and produce all of these crops at their own expense and to deliver defendants' share to them on the premises.

This agreement was fully performed throughout the year 1936. Plaintiffs entered upon the raw, rolling land. They cut down the high places and put in fills. After the ground was scraped and leveled they disked it twice. They put up levees. They plowed and chiseled the field and strip-checked ten checks. They then harrowed, seeded with seed supplied by the defendants, and harrowed again. Practically the entire first growth of alfalfa was cut, hauled, and burned. All this required an estimated 200 hours of labor and an expenditure of over $688, which was the reasonable value of the work performed. With care and irrigation of the land, several additional cuttings were obtained during the 1936 season and the plaintiffs' right to these crops was not questioned.

During the early months of 1937, plaintiffs again entered upon the property and performed preliminary work for that cropping season. In April, while they were engaged in cutting hay, the defendant husband came to them and told them that he claimed the entire crop. He informed them that their lease had terminated; that it had only been for one year; and that they should have asked for a renewal. Upon their refusal to surrender possession, he caused a written notice to be served upon them stating that their right of occupancy had expired, and ordering them to quit the premises within three days. The filing of this action followed. The cause was tried in June, 1937; findings and judgment in favor of plaintiffs were entered in October, but it was agreed that plaintiffs would continue in possession of the land during 1937, and that defendants would accept,

without prejudice to their rights herein, one-half of the crops produced for that year.

The court, having heard the cause without a jury, reached the conclusion that plaintiffs had a binding enforceable lease upon the property for the three years, with the right to the 1936 crops, and an equal share of the 1937 and 1938 crops. It concluded that in negotiating for and completing the lease, defendant husband was the agent and servant of his wife and acted with her knowledge, consent, and approval, and that defendants were estopped to deny the execution and existence of the lease, or to raise the bar of the statute of frauds.

■ Appellants challenge the correctness of these conclusions and they further assert that testimony is lacking to support particular findings. Neither contention can be sustained. Upon the controverted issues of fact the testimony of plaintiffs is a flat contradiction of that of defendants. The court was privileged to credit the statements of plaintiffs and to discredit those of defendants, and each of its findings is supported by substantial competent evidence.

■ Clearly the facts which were found to be true warrant the application of the doctrine of equitable estoppel. The rules governing that doctrine are well established. ■ The conduct of defendants was such as to estop them to make the defense of the statute of frauds (*Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]; *Needham* v. *Abbot Kinney Co.*, 217 Cal. 72 [17 Pac. (2d) 109]; *Notten* v. *Mensing*, 3 Cal. (2d) 469 [45 Pac. (2d) 198]; *Wilson* v. *Bailey*, 8 Cal. (2d) 416 [65 Pac. (2d) 770]), and, in particular, under the provisions of section 172a of the Civil Code, the defendant wife was estopped by her conduct from avoiding the agreement. (*Mark* v. *Title Guar. & Tr. Co.*, 122 Cal. App. 301 [9 Pac. (2d) 839]; *Schelling* v. *Thomas*, 96 Cal. App. 682 [274 Pac. 755]; *Rice* v. *McCarthy*, 73 Cal. App. 655 [239 Pac. 56].)

The judgment is affirmed.

Langdon, J., Curtis, J., Houser, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.